IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

LANCE DELMORE,

    Plaintiff,

  v.

RICOH AMERICAS CORPORATION and DOES 1-10,

    Defendants.
                                                  /

No. C 09-03378 CW

ORDER GRANTING MOTION TO COMPEL ARBITRATION AND TO STAY PROCEEDINGS

    Defendant Ricoh Americas Corporation moves to compel arbitration of Plaintiff Lance Delmore's claims against it and to stay the action pending the conclusion of arbitration. Delmore opposes the motion. Having considered all of the papers filed by the parties, the Court grants Ricoh's motion to compel arbitration and to stay the proceedings.

BACKGROUND

    Ricoh is a corporation engaged in the business of selling and servicing document imaging and output equipment, including copiers, fax machines, printers and multi-functional devices, and related supplies and services such as software, paper and toner. On February 5, 2007, Delmore started working on a temporary basis for Lanier Worldwide, Inc., a subsidiary of Ricoh, as a Customer

Delivery Representative.

On February 12, 2007, Delmore and Lanier entered into a written confidentiality agreement. Delmore's supervisor, Paul Wilson, asked Delmore to come to his office to sign some paperwork. Delmore had previously signed some hiring paperwork, but Wilson told Delmore that he needed to sign one more form so that he could become a permanent, full-time employee. Delmore Dec. ¶ 6. Delmore signed the agreement in Wilson's office. Wilson told Delmore that the agreement was "just some bullshit paper that said that [he] couldn't tell other companies about our customers or our products." Delmore Dec. ¶ 7. The words "Confidentiality Agreement" are on the top of the first page in large, bold, capital letters. Delmore Dec., Ex. A at 1. Nobody aside from Delmore and Wilson was present during the signing of the agreement.

At Wilson's instruction, Delmore initialed next to paragraph eight and signed the last page of the agreement. Paragraph eight states:

> If a legally cognizable dispute arises out of or relates to this Agreement or the breach, termination, or validity thereof, or the compensation, promotion, demotion, discipline, discharge or terms and conditions of employment of the Employee, and if said dispute cannot be settled through direct discussions, the parties voluntarily agree to resolve the dispute by binding arbitration before the American Arbitration Association ("AAA"), Center for Public Resources ("CPR"), Judicial Arbitration and Mediation Services ("JAMS") or Resolution Resources Corporation. The arbitration shall proceed in accordance with the Employment Dispute Resolution Rules of the AAA in effect on the date of the demand for arbitration, each side shall be allowed to take reasonable discovery, and judgment upon the award rendered by the arbitrator may be entered in any court having jurisdiction thereof, provided, however, that disputes involving the unauthorized use or disclosure of Trade Secrets or Confidential Information, may be settled by any court having jurisdiction thereof or decided by arbitration pursuant to this section. Disputes subject to binding arbitration pursuant to this section include all tort and contract claims

> as well as claims brought under all applicable federal, state, or local statutes, laws, regulations, or ordinances, including but not limited to, Title VII of the Civil Rights Act of 1964, as amended; the Family and Medical Leave Act; the Americans with Disabilities Act; the Rehabilitation Act of 1973, as amended; the Fair Labor Standards Act of 1938, as amended; the Age Discrimination in Employment Act, as amended; the Equal Pay Act, the Civil Rights Act of 1866, as amended; the Employee Retirement Income Security Act of 1974; and state business and professions code claims.  Disputes subject to binding arbitration pursuant to this section also include claims against the Company's parent and subsidiaries, and affiliated and successor companies, and claims against the Company that include claims against the Company's agents and employees, in their capacity as such and otherwise.  The remedies available through arbitration shall include all remedies available if the dispute had been tried in court. Each party shall pay for his/her/its own fees and expenses of arbitration except that the cost of the arbitrator and any filing fee shall be paid by the Company.  This arbitration provision shall not apply to any claim arising in a state that bars or prohibits the arbitration of such claims.

Delmore Dec., Ex. A ¶ 8.  Paragraph eight was the only part of the five page agreement that Delmore was required to initial separately.  Wilson also initialed it and signed at the end of the agreement.  The entire process took about two minutes, after which Delmore returned to work.

On April 1, 2007, through a Certificate of Ownership and Merger dated March 19, 2007, Lanier merged with Ricoh Corporation. Nix Dec., Ex. A at 1.  At that time, Lanier dissolved and ceased to exist as a separate entity.  Ricoh Corporation assumed all of Lanier's assets, debts, rights, responsibilities, liabilities and obligations and Lanier employees became Ricoh Corporation employees.  Nix Dec. ¶ 4.  By the Certificate of Ownership and Merger, Ricoh Corporation also changed its name to Ricoh Americas Corporation.  Nix Dec., Ex A at 2.

On April 20, 2009, Delmore filed a suit against Ricoh in Alameda County Superior Court for acts that occurred between

3

September, 2007 and June, 2008.  Delmore specifically alleges that Ricoh (1) negligently hired and retained employees who discriminated against and harassed him; (2) discriminated against him in violation of the Fair Employment and Housing Act (FEHA), California Government Code Section 12940 et seq.; (3) retaliated against him in violation of FEHA; (4) discriminated against him in violation of public policy; (5) retaliated against him for complaints of discrimination in violation of public policy; (6) intentionally inflicted emotional distress upon him; (7) negligently inflicted emotional distress upon him; (8) negligently hired and retained employees who discriminated against and harassed him; and (9) negligently supervised and trained employees who discriminated against and harassed him.

On July 23, 2009, Ricoh removed the action to federal court pursuant to 28 U.S.C. § 1441(a) on grounds of diversity jurisdiction.  Plaintiff does not dispute that removal was proper.

## LEGAL STANDARD

Under the Federal Arbitration Act (FAA), 9 U.S.C. § 1 et seq., written agreements that require controversies between parties to be settled by arbitration are valid, irrevocable and enforceable.  9 U.S.C. § 2.  A party aggrieved by the refusal of another to arbitrate under a written arbitration agreement may petition the district court which would, save for the arbitration agreement, have jurisdiction over that action, for an order directing that arbitration proceed as provided for in the agreement.  9 U.S.C. § 4.

If the court is satisfied "that the making of the arbitration agreement or the failure to comply with the agreement is not in

4

1  issue, the court shall make an order directing the parties to
2  proceed to arbitration in accordance with the terms of the
3  agreement." Id.  The FAA reflects a "liberal federal policy
4  favoring arbitration agreements." Gilmer v. Interstate/Johnson
5  Lane Corp., 500 U.S. 20, 25 (1991) (quoting Moses H. Cone Mem'l
6  Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983)). A district
7  court must compel arbitration under the FAA if it determines that:
8  1) there exists a valid agreement to arbitrate; and 2) the dispute
9  falls within its terms. Stern v. Cingular Wireless Corp., 453 F.
10 Supp. 2d 1138, 1143 (C.D. Cal. 2006) (citing Chiron Corp. v. Ortho
11 Diagnostic Sys., 207 F.3d 1126, 1130 (9th Cir. 2000)).

DISCUSSION

I.   Motion to Compel Arbitration

   Delmore argues that the Court should not compel arbitration for three reasons.  First, he argues that Ricoh is not party to the agreement and therefore has no right to enforce the arbitration clause.  Second, Delmore argues that even if Ricoh is in privity with a party to the agreement, the agreement is unconscionable and should not be enforced.  Finally, Delmore claims that his FEHA claims are not subject to arbitration because he did not make a "knowing waiver" of his right to a judicial forum for civil rights claims.

   A.   Privity of Contract

   As Delmore notes, the agreement is between Delmore and Lanier. Ricoh is not a signatory to the contract.  Non-signatories of arbitration agreements may be bound by the agreement under ordinary contract and agency principles. Britton v. Co-op Banking Group, 4 F.3d 742, 745 (9th Cir. 1993) (citing Letizia v. Prudential Bache

5

Sec., Inc., 802 F.2d 1185, 1187 (9th Cir. 1986)). Ricoh argues that, even though it was not a signatory to the contract, it can enforce the agreement because Lanier assigned the contract to Ricoh when the companies merged. To prove an effective assignment, the assignee must come forth with evidence that the assignor meant to assign rights and obligations under the contracts. Britton, 4 F.3d at 746.

In this case, Ricoh has evidence of an effective assignment in both the confidentiality agreement and the Certificate of Ownership and Merger. The agreement specifically states, "Disputes subject to binding arbitration pursuant to this section also include claims against the Company's parent and subsidiaries, and affiliated and successor companies . . . ." Delmore Dec., Ex. A ¶ 8. In addition, the agreement states, "Employee acknowledges and agrees that in the event of the sale of the Company, or any business of the Company, this Agreement shall be assignable to any successor company, without any further consideration therefor, at the sole discretion of the Company." Delmore Dec., Ex. A ¶ 11.

Under the Certificate of Ownership and Merger, Ricoh took possession of all the "estate, property, rights, privileges and franchises of Lanier." Nix. Dec., Ex. A at 1. Ricoh also assumed all of Lanier's assets, debts, rights, responsibilities, liabilities and obligations. (Nix Dec. ¶ 4). Lanier's contractual rights vested in Ricoh after the merger took place, and, therefore, Ricoh can enforce the agreement against Plaintiff.

B. Unconscionability

In determining whether an agreement to arbitrate is valid, federal courts must "apply ordinary state-law principles that

6

govern the formation of contracts." Circuit City Stores v. Adams, 279 F.3d 889, 892 (9th Cir. 2002) (quoting First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944 (1995)). "General contract defenses such as fraud, duress or unconscionability, grounded in state contract law, may operate to invalidate arbitration agreements." Id. (citing Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996)); Ticknor v. Choice Hotels Int'l, Inc., 265 F.3d 931, 937 (9th Cir. 2001) (citing same). "If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract . . . ." Cal. Civ. Code § 1670.5(a).

Under California law, unconscionability has both a procedural and a substantive component. Armendariz v. Found. Health Psychcare Servs., 24 Cal. 4th 83, 114 (2000). Although both procedural and substantive unconscionability must be present before a court will refuse to enforce a contract, they need not be present to the same degree: "the more substantively oppressive the contract terms, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa." Id.

        1.    Procedural Unconscionability

A contract or clause is procedurally unconscionable if it is a contract of adhesion. Circuit City, 279 F.3d at 893 ("The [arbitration agreement] is procedurally unconscionable because it is a contract of adhesion."); see also Flores v. Transamerica Homefirst, Inc., 93 Cal. App. 4th 846, 853 (2002) ("A finding of a contract of adhesion is essentially a finding of procedural

7

unconscionability."). A contract of adhesion is a "standardized contract, which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it." Armendariz, 24 Cal. 4th at 113 (quoting Neal v. State Farm Ins. Co., 188 Cal. App. 2d 690, 694 (1961)).

In Armendariz, the California Supreme Court found an arbitration contract to be procedurally unconscionable because it "was imposed on employees as a condition of employment and there was no opportunity to negotiate." 24 Cal. 4th at 114-15. The court explained that "the economic pressure exerted by employers on all but the most sought-after employees may be particularly acute, for the arbitration agreement stands between the employee and necessary employment, and few employees are in a position to refuse a job because of an arbitration requirement." Id.

Here, the agreement is a standard form contract required of all Ricoh employees. It was drafted by the party with superior bargaining strength, and was offered on a take-it-or-leave-it basis, with no opportunity for Delmore to negotiate its terms. It is therefore a contract of adhesion and is procedurally unconscionable.

Delmore argues that the arbitration clause is particularly procedurally unconscionable because it was hidden in a contract entitled, "Confidentiality Agreement," and the first three pages addressed only confidentiality issues. Procedural unconscionability may include an element of surprise. Am. Software, Inc. v. Ali, 46 Cal. App. 4th 1386, 1390 (1996).

8

"Surprise involves the extent to which the supposedly agreed-upon terms of the bargain are hidden in a prolix printed form drafted by the party seeking to enforce the disputed terms." Ellis v. McKinnon Broad. Co., 18 Cal. App. 4th 1796, 1803 (1993). However, Delmore's argument is undercut by the fact that he initialed the arbitration clause, and only the arbitration clause. The clause, therefore, was not "hidden" but required special attention.

### 2. Substantive Unconscionability

Under California law, a contract is enforceable, no matter how great the degree of procedural unconscionability, unless it is also substantively unconscionable. Armendariz, 24 Cal. 4th at 114. Substantive unconscionability focuses on the harshness and one-sided nature of the substantive terms of the contract. A & M Produce Co. v. FMC Corp., 135 Cal. App. 3d 473, 486-87 (1982). An adhesive agreement to arbitrate will satisfy this general standard for substantive unconscionability if the agreement lacks a "modicum of bilaterality." Armendariz, 24 Cal. 4th at 117. Whether an arbitration agreement is sufficiently bilateral is determined by an examination of the actual effects of the challenged provisions. Ellis, 18 Cal. App. 4th at 1803 ("Substantive unconscionability . . . refers to an overly harsh allocation of risks or costs which is not justified by the circumstances under which the contract was made.") (internal quotation marks omitted).

In addition, an employment agreement that requires the arbitration of unwaivable statutory claims is lawful only if it

> (1) provides for neutral arbitrators, (2) provides for more than minimal discovery, (3) requires a written award, (4) provides for all of the types of relief that would otherwise be available in court, and (5) does not require employees to pay either unreasonable costs or any arbitrators'

> fees or expenses as a condition of access to the arbitration forum.

Armendariz, 24 Cal. 4th at 102 (quoting Cole v. Breuns Intern. Sec. Serv., 105 F.3d 1465, 1482 (D.C. Cir. 1997)).

The agreement between Ricoh and Delmore fulfills these five basic requirements. The agreement explicitly fulfills the fourth and fifth requirements involving remedies and fees. The agreement states, "The remedies available through arbitration shall include all remedies available if the dispute had been tried in court." Delmore Dec., Ex. A ¶ 8. In terms of fees, the agreement requires the company to pay for the cost of the arbitrator and the filing fees, leaving the employee to pay only his own fees and expenses. Delmore Dec., Ex. A ¶ 8.

For the first, second, and third requirements of a neutral arbitrator, discovery and a written award respectively, the agreement states that the parties will follow the American Arbitration Association's Employment Dispute Resolution Rules (AAA Rules). Delmore Dec., Ex. A ¶ 8. The AAA Rules provide that a "neutral arbitrator" shall be appointed who is "experienced in the field of employment law" and who has "[n]o personal or financial interest in the results of the proceeding and . . . no relation to the underlying dispute or to the parties or their counsel that may create an appearance of bias." DeToy Dec., Ex. B at 9-10, AAA Employment Dispute Resolution Rule 12(b)(i-ii). For discovery, AAA Rule 9 gives the arbitrator authority to "order such discovery, by way of deposition, interrogatory, document production, or otherwise, as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited

nature of arbitration." Id. at 9.  Finally, AAA Rule 39(c) requires the arbitrator to issue a written award setting forth reasons for the award.  Id. at 14.

Ricoh argues that an arbitration agreement passes muster under Armendariz if it meets these five minimum requirements. Ricoh mischaracterizes Armendariz.  In that case, the California Supreme Court, after evaluating the minimum requirements applicable to mandatory employment arbitration agreements, went on to address other more general issues that also "fall under the rubric of unconscionability." Armendariz, 24 Cal. 4th at 113.  Thus, although the agreement between Ricoh and Delmore satisfies these five requirements, the Court must determine whether there is any other way in which the agreement is substantively unconscionable.

Delmore contends that the arbitration clause is one-sided because it refers to disputes that are typically brought by employees against their employer, such as disputes arising out of "the compensation, promotion, demotion, discipline, discharge or terms and conditions of employment of the Employee." Delmore Dec., Ex. A ¶ 8.  While it may be true that employees are usually the plaintiffs in these disputes, this does not rise to the level of unconscionability described in Armendariz.  Courts generally find unconscionability when the arbitration agreement forces employees to submit their claims to arbitration, while allowing the employer to retain his right to judicial forum. See Armendariz, 24 Cal. 4th at 117; Kinney v. United HealthCare Servs., 70 Cal. App. 4th 1322, 1332 (1999).  Here, the arbitration clause requires both Ricoh and Delmore to submit any employment-related claims to arbitration, including disputes regarding a breach of the Confidentiality

11

Agreement.  Delmore Dec., Ex. A ¶ 8.

Delmore also argues that the agreement is substantively unconscionable because paragraph seven of the agreement is one-sided.  Paragraph seven gives Ricoh the right to go to court to obtain an injunction against an employee who breaches confidentiality, and collect attorneys' fees in connection with the injunction, without giving the employee the same right.  Delmore Dec., Ex. A ¶ 7.  This discrepancy does not support a finding of substantive unconscionability because unconscionability turns not only on a "one-sided result but on an absence of justification for it."  A & M Produce, 135 Cal. App. 3d at 487 (internal quotation marks omitted).  Paragraph seven addresses specific remedies that Ricoh may pursue if an employee breaches confidentiality.  Delmore Dec., Ex. A ¶¶ 3, 7.  Ricoh is the only party that could complain of breach of confidentiality because it is the owner of the "Confidential Information" and "Trade Secrets" to which the agreement refers.  Id.  Thus, Ricoh is the only party that would need to obtain an injunction and, given that arbitrators do not have the power to grant injunctions, it would have to go to court to obtain one.  Because there is a reasonable justification for the one-sided terms in paragraph seven, it does not render the agreement substantively unconscionable.

C.   Knowing Waiver

Delmore argues that, because Ricoh never explicitly told him that he was agreeing to arbitrate his FEHA claims, he never made a knowing waiver of his right to a judicial forum for his FEHA claims, and therefore the arbitration agreement cannot be enforced.  Delmore urges the Court to apply the Ninth Circuit's "knowing

12

waiver" standard to the arbitration agreement. Under the "knowing waiver" standard, "[a]ny bargain to waive the right to a judicial forum for civil rights claims . . . in exchange for employment or continued employment . . . must be explicitly presented to the employee and the employee must explicitly agree to waive the specific right in question." Nelson v. Cypress Baghdad Copper, 119 F.3d 756, 762 (9th Cir. 1997).

However, as mentioned above, the FAA requires courts to look to relevant state law when deciding whether the parties agreed to arbitrate a particular matter. First Options of Chicago, Inc., 514 U.S. at 944. California courts have refused to extend the "knowing waiver" standard beyond sex discrimination claims arising under Title VII. Cione v. Foresters Equity Servs., Inc., 58 Cal. App. 4th 625, 645 (1997). Regarding arbitration agreements that apply to FEHA claims, California courts have rejected the "knowing waiver" standard as being "inconsistent with United States Supreme Court authority to the extent that it purports to create a federal contractual standard." Brookwood v. Bank of Am., 45 Cal. App. 4th 1667, 1674-75 (1996).

Instead, California law requires courts to determine the existence of mutual assent to a contract based upon objective and outward manifestations of the parties. Stewart v. Precision Pipeline, 134 Cal. App. 4th 1565, 1587 (2005) (citing Beard v. Goodrich, 110 Cal. App. 4th 1031, 1040 (2003)). Delmore's signature on the confidentiality agreement and initial on the arbitration clause is objective evidence of his assent to its terms. Marin Storage & Trucking, Inc. v. Benco Contracting and Eng'g, Inc., 89 Cal. App. 4th 1042, 1049 (2001)("[O]rdinarily one

13

who signs an instrument which on its face is a contract is deemed to assent to all its terms."). The unambiguous language of the agreement put Delmore on notice that, by initialing this paragraph and signing the agreement, he agreed to arbitrate any claims he had under Title VII or similar state civil rights statutes.

Even if the Court applied the "knowing waiver" standard in this case, Delmore would still be bound by the arbitration clause. The Ninth Circuit has held that a "knowing waiver does not occur where neither the arbitration clauses nor any other written employment agreement expressly puts the plaintiffs 'on notice that they were bound to arbitrate Title VII claims.'" Renteria v. Prudential Ins. Co. of Am., 113 F.3d 1104, 1108 (9th Cir. 1997) (quoting Prudential Ins. Co. of Am. v. Lai, 42 F.3d 1299, 1305 (9th Cir. 1994)). In Renteria and Lai the Ninth Circuit found that the plaintiffs did not making a "knowing waiver" of their statutory rights because the employment contracts that the plaintiffs signed did not "'describe the types of disputes that were to be subject to arbitration.'" Renteria, 113 F.3d at 1107 (quoting Lai, 42 F.3d at 1305). The contract in dispute in Renteria only stated in general terms that employees would have to arbitrate disputes that arose between themselves and the company, customers, or anyone else in connection with the business. Renteria, 113 F.3d at 1105. Similarly, the contract in Nelson stated that employees had to arbitrate "any dispute arising out of or based on any state or federal statute or law" related to their employment. 119 F.3d at 758. In contrast to these Ninth Circuit cases, the agreement between Delmore and Ricoh explicitly states that claims brought under all applicable federal and state laws, including Title VII

14

and similar civil rights laws, are subject to arbitration.  Delmore Dec., Ex. A ¶ 8.  Therefore, Delmore made a knowing waiver of his right to a judicial forum for his civil rights claims.

II.  Motion to Stay the Proceedings

The FAA provides that:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . .

9 U.S.C. § 3.  The Court has determined that there is a valid arbitration agreement and that the dispute falls within its terms. Therefore, the Court must stay the proceedings.

//
//
//
//
//
//
//
//
//
//
//
//
//
//

CONCLUSION

For the foregoing reasons, the Court GRANTS Ricoh's motion to compel arbitration.  The case is stayed pending arbitration, which must be diligently pursued.[1]  Nothing contained in this Order shall be considered a dismissal or disposition of this action, and, should further proceedings in this litigation become necessary or desirable, any party may move to restore the case to the Court's calendar.

IT IS SO ORDERED.

Dated: 10/20/09

CLAUDIA WILKEN
United States District Judge

---

[1] There appears to be no further reason at this time to maintain the file as an open one for statistical purposes, and the Clerk is instructed to submit a JS-6 Form to the Administrative Office.